Charles P. Ayers, Jr., Esq. Town Attorney, Tioga
I am writing in response to your request for an Attorney General's opinion as to the Town of Tioga's financial liability under section511-b of the Vehicle and Traffic Law.
Section 511-b was enacted as part of a 1985 legislative package which toughened the penalties for operating a motor vehicle without a valid driver's license (L 1985, ch 756). Other sections in the package include a revision of Vehicle and Traffic Law, § 511, which now sets forth the varying degrees of the offense of "aggravated unlicensed operation of a motor vehicle"; and the addition of Vehicle and Traffic Law, §511-a which creates the offense of "facilitating aggravated unlicensed operation of a motor vehicle". Section 511-b provides for the seizure and impoundment of the motor vehicles that are being operated without a valid license.
More specifically, section 511-b requires a police officer making an arrest for aggravated unlicensed operation of a motor vehicle in the first or second degrees* to "remove or arrange for the removal of the vehicle to a garage, automobile pound, or other place of safety where it shall remain, impounded, subject to the provisions of this section . . ." (Vehicle and Traffic Law, § 511-b[1]). The statute does not provide any guidance with regard to how the police officer selects the impoundment site (in the instance where there is more than one option). The statute does provide, however, that once the motor vehicle is impounded, it "shall be in the custody of the local authority" (id.,
§ 511-b[2]). Subject to certain exceptions for seizures occurring on State property, "local authority" refers to the municipality in which the vehicle was seized (id., § 511-b[6]; see Op Atty Gen No. 87-20).
Subdivision 2 of section 511-b also provides the procedure by which the impounded motor vehicles can be redeemed by their owners. If the owner isnot the person accused of driving without a license, the motor vehicle can be redeemed by showing evidence of registration and financial security, and payment of the costs for the car's removal and storage (ibid.). Under certain circumstances, such owner of the vehicle can redeem the vehicle without the payment of towing and storage costs (ibid.)*. If the owner is the person accused of driving without a license, he can redeem the vehicle by showing that he has a valid driver's license and with satisfactory evidence that: the criminal action for unlicensed operation has been terminated and any fine has been paid; or that the court in which the action was commenced has ordered release of the vehicle; or that the district attorney prosecuting the action has waived the requirement that the car be held as security (id., § 511-b[2][c]).
If the motor vehicle remains in the custody of the local authority for over 120 days, the local authority, after giving notice to the motor vehicle owner, can commence a forfeiture proceeding (id., § 511-b[4]). Once so forfeited, the motor vehicle becomes the property of the local authority but subject to "any lien that was recorded prior to the seizure" (id., § 511-b[5]).
As your letter indicates, a situation now exists in the town which has raised some questions as to the applicability of section 511-b. Currently, an automobile is in the possession of a local service station after having been seized by the State Police pursuant to section 511-b. The vehicle is a 1972 Pontiac sedan which the owner purchased recently for $100. The town has information that in the past the service station owner has charged $7 per day for outside storage of vehicles. The town estimates present storage charges at $280, approximately $180 greater than the value of the vehicle. In view of these facts, the town anticipates that the vehicle will not be redeemed, as the owner was also the operator at the time of the offense.
Your initial question is whether the town is liable for these storage charges solely by virtue of the language in section 511-b which provides that "a motor vehicle so impounded shall be in the custody of the local authority".
As we have discussed, section 511-b describes, with great specificity, the circumstances under which a motor vehicle can be impounded, redeemed and forfeited (id., § 511-b[1], [2], [3], [4]). Although the statute requires a redeeming owner to pay the removal and storage costs, the statute does not mention who pays these storage costs in the event of forfeiture or where redemption occurs within the ten-day period following notice (id., § 511-b[2]; see Legislative Bill Jacket, L 1985, ch 756, Memorandum from New York State Police dated July 5, 1985). Your question is whether the local authority, having custody of the car, is required by the statute to pay the removal and storage costs in these two scenarios.
Section 511-b does not deal with assumption of costs associated with forfeited and certain other vehicles. It appears that the Legislature did not focus on this problem. The statute does, however, give the local authority "custody" of the vehicle. As the custodian, the local authority would, in our view, have responsibility for the costs under the aforementioned scenarios. We believe that a local government can lessen or eliminate this financial burden by establishing a policy regarding impounded vehicles. This policy could require that vehicles be impounded on municipal property or in accordance with an agreement with a private garage.
We recognize, however, that seizure may be done in some situations by a law enforcement officer who is not an employee of that local authority (e.g., impoundment in town by a State trooper or sheriff's deputy). We believe, nevertheless, that this problem can be remedied by requesting that these law enforcement agencies comply with established policy of the local authority regarding impoundment under section 511-b. As the legal custodian of these vehicles, the local authority can determine the place and conditions of impoundment.
You have also asked if it is mandatory that the local authority give notice of forfeiture pursuant to subdivision 3 of section 511-b.
Subdivision 4 of section 511-b provides that a vehicle can only be forfeited after the expiration of the period of notice set forth in subdivision 3 of section 511-b (Vehicle and Traffic Law, §511-b[4]). Notice to the owner, therefore, is a prerequisite to any forfeiture, and is mandatory. If actual notice cannot be given, however, the statute does provide the alternative of notice by publication:
 "If notice cannot be given because the owner or his whereabouts is unknown, the local authority shall publish intent to dispose of the motor vehicle for a period of ten days in a newspaper of general circulation in accordance with the regulations of the commissioner [of Motor Vehicles] and in such case notice shall be deemed to have been given upon expiration of the ten days of publication" (id.,
§ 511-b[3]).
Finally, you have asked whether an impounded motor vehicle can become the property of the local authority under authority of subdivision 5 of the statute if the local authority does not bring a forfeiture proceeding pursuant to subdivision 4 of the statute.
Subdivision 5 of section 511-b provides as follows:
 "A motor vehicle forfeited in accordance with the provisions of this section shall be and become the property of the local authority, subject however to any lien that was recorded prior to the seizure" (id., § 511-b[5]).
A forfeiture proceeding, therefore, is a prerequisite to the ownership provision found in subdivision 5. Standing alone, subdivision 5 does not grant the local authority with any property right, or means to obtain ownership of the motor vehicle.
We conclude that section 511-b of the Vehicle and Traffic Law gives a town custody of vehicles impounded under this section. The town is responsible for payment of certain impoundment costs but can enter into agreements with a private garage for the storage of these vehicles or may store them on municipal property.
* Aggravated unlicensed operation in the second degree requires actual unlicensed operation and either: (1) a previous conviction for the same within the prior eighteen months; or (2) a suspension or revocation of a driver's license based on refusal to submit to a blood alcohol test or a conviction for driving while intoxicated (Vehicle and Traffic Law, § 511[2]). First degree unlicensed operation requires actual unlicensed operation; the revocation or suspension of the license based on refusal to take a blood alcohol test or driving while intoxicated; and operation while under the influence of drugs or alcohol at the time of the arrest for unlicensed operation (id., § 511[3]).
* If the owner redeems the car within ten days of being notified of its impoundment, and affirms that he has not within the last 18 months redeemed a vehicle seized under this section for similar violations by the same person, towing and storage charges are waived (Vehicle and Traffic Law, § 511-b[2][b]).